I'm advised by the clerk that all counsel are present in today's state calendar and so we'll proceed to hear oral argument in the first case, number 21-1266, American Oversight v. U.S. Department of Justice. Please proceed. Good morning. I've been informed I can take my mask off for the argument itself. Thank you. May it please the court, my name is Catherine Anthony. I'm here on behalf of plaintiff Could you lift up the microphone a little bit and try to speak into the mic, thank you. Good morning. May it please the court, my name is Catherine Anthony. I'm here on behalf of plaintiff appellant American Oversight. This Freedom of Information Act case is a straightforward application of well-established principles of attorney work product and waiver. Our argument is not novel, but it is narrow. It's confined to the specific unique facts concerning the specific types of documents at issue in this case, which were created for a particular purpose pursuant to specific requirements of a policy, a government policy. This court's holding does not need to extend broadly to beyond these narrow facts to any types of attorney notes or witness interview notes or summaries. Rather, it needs to address, as this court has said in the past, questions of the scope of attorney work product on a case-by-case basis. The remaining documents at issue in this case are primarily FBI 302 forms and some other records of interviews with the targets and subjects of an investigation. 302 forms were created for a purpose pursuant to a policy, and the government enjoys a presumption of regularity that they have in fact complied with that policy. Can we start with your limiting it now to targets and subjects? Is it your contention that the government alerts people to the fact that they are targets or subjects? Pursuant to government policies, typically, yes, our understanding is that they would be alerted to that fact. Is that cited in your brief where the government routinely discloses to individuals not simply targets but also subjects? I believe that it is, Your Honor. I do not have the site in front of me. Because that's our starting point, isn't it? Whether or not the disclosure of targets and subjects was made, because if not, that would be work product by the government that they have identified these people as subjects or targets, right? Well, again, I do believe that pursuant to policy, and I do apologize, I don't have the exact site in front of me. I think you're right about targets, by the way, but I'm not sure about subjects, and I was just looking for that. But I'll ask the government. I don't want to take up time in your argument. So you're limiting it to interviews with subjects or targets. Yes. And my question there is, of course, in Steinhardt we said these matters are dealt with on a case-by-case basis. I'm not sure why there is a public interest in getting information about subjects and targets in this circumstance versus Steinhardt, where the inquiry was being made of the subject of the SEC investigation. Help me out in seeing why FOIA should apply here. Well, FOIA, of course, allows the public to know what the government is up to. And so there is, and this particular, so Steinhardt was not a FOIA case and was limited to those specific facts. Here we do have a different purpose for getting at these records. This was a matter of national attention. I don't think that, so we have limited the scope of the party's dispute to subjects and targets of an investigation. I do think that- No, I'm thinking it's akin somewhat, though, in this context to grand juries, where there's secrecy imposed unless and until a person is indicted, because any number of people might be investigated. There's serious reputational concern with identifying folks as targets or subjects who are never prosecuted. Well, I am glad you asked that question, Your Honor, because the government's concerns about the potential consequences of this case are actually addressed through other FOIA exemptions. So we are only discussing FOIA Exemption 5 and the attorney work product with respect to these records. But, for instance, and this is an investigation which has already been concluded, but for another fact pattern where the investigation was still ongoing, FOIA Exemption 7A, for instance, which is for ongoing investigations or enforcement proceedings, it certainly is conceivable, even likely, that the government could make a case for that exemption applying. There are other FOIA exemptions as well that could apply, other privileges under Exemption 5, other law enforcement exemptions for the privacy exemptions, law enforcement investigations and techniques under 7E. The government, of course- talks about 7E, and that might raise questions about whether the government has to disclose its questions here, which it certainly did disclose to the persons being interviewed. But let me take you a step further. The government didn't disclose their answers to anybody, and you want their answers, right? Well, the answers were given by the subjects and targets themselves who are litigation adversaries. And the principles- It's disclosure to a litigation adversary, but you're asking of this information from the government and on the theory that the government disclosed the information to an adversary. It didn't disclose the answers. It had the answers disclosed to it. So help me out with why you're entitled to the answers. Well, the answers themselves are not work product. To the extent they were written down- But they're not written down verbatim, and that's the government's argument, that to the extent the FBI agent exercised any judgment in writing down the answers or in summarizing the interview, it is work product. But in any event, it doesn't have the waiver position, am I right? You can't argue waiver with respect to the answers. Well, I would argue that the answers were not work product of the government. I don't believe- Even though they involved some selection by the government as to which- I mean, it's not a transcript. So to that extent, I mean, it seems to fit within many cases we've had about a party collecting evidence and memorializing its investigation. Why shouldn't we view it as fitting within that? Well, a 302 form is not the same as what we would think about a standard witness interview where an attorney might have organized things into specific-emphasized specific things. A 302 form is created to memorialize the statements of witnesses who may testify at trial. It could be used for impeachment purposes, refresh recollection. And so there is a policy directing that it simply record the statements given and the questions asked and the statements given. But it still is not a verbatim transcript. I mean, it's someone who is taking notes and choosing what to write down and not to write down. Isn't that right? Well, it is supposed to transcribe what is said. I certainly understand it's likely not a word-for-word verbatim transcript, but it is supposed to be as accurate as possible for the purposes that it is used for. The government does bear the burden in a FOIA case. They are presumed to have complied with their policy. And all we have on the record here is that those documents did, in fact, reflect the questions asked and topics discussed. The policy says it's not supposed to contain the interviewer's opinion or contextual comments, but it still is going to reflect choices about what to record and what not, possibly what to emphasize or what not. So it still reflects, in my view, because it's not a transcript, a selection process. Is that wrong? To be used for the purpose that it is intended for, to later be used at trial, it should be as accurate as possible if the government would like to show that in – But doesn't it reflect a selection process still because it's not a shorthand transcript? I do see that I am out of time. Yes, you are. Thank you. The government does bear the burden to rebut the presumption that they have complied with their own policy in this case to the extent that they are asserting that more was in these records beyond the questions asked and topics discussed, which is all their declaration establishes in terms of concrete items, that it would be their burden to establish that, and they have not in this case. What I'm suggesting is there are omissions, not more, and potentially meaningful omissions. But you have a minute of rebuttal, and we'll hear what the government has to say. Thank you. Thank you. Good morning. May it please the Court, Sarah Norman on behalf of the Department of Justice. Let me begin by addressing some of the questions that the Court asked. These records clearly are not the same as simply the questions and answers given during an interview. The FBI policy that was cited, as Your Honor identified, requires FBI agents to omit commentary and opinions, but that does not mean that the FBI agents who are recording the interviews are not making selections and exercising their judgment about what is important. And my colleague referred to the purpose of these documents. The government's declaration of AUSA McKay makes clear that the purpose of these documents was to record and memorialize witness interviews for the purpose of gathering facts in a criminal investigation and helping the prosecutors evaluate whether criminal charges were appropriate. And that is the lens through which the FBI agents who were recording the 302s were operating. Those agents were part of the investigative team, part of the prosecution team conducting the investigation. They were acting under the substantial direction of the prosecutors. And in fact, they even conferred with the prosecutors in advance about the investigatory strategy for the interviews. So in that vein, it's clear that the records would in fact reflect what the agents thought was important to the criminal investigation. And that is mental impressions that is separate and apart from what any one witness might have heard or later been able to recall or have written down about the interview. If there were a stenographer there and it was an exact transcript, would you take the same position? Well, Your Honor, that's a very interesting question because here in FOIA, we have a different situation than in civil discovery. So in civil discovery, what Rule 26b-3 says is that if you had a verbatim transcript or a signed witness statement, that would be discoverable if it was requested by the party whose statement it was. Under FOIA, though, you look, and under Exemption 5, you look at whether documents would be ordinarily or routinely discoverable in discovery against the government. And a transcript, and you don't consider who the requester is, so it doesn't matter whether it's requested by American Oversight or someone else, it's whether it's routinely and normally discoverable in civil litigation. And even a transcript or a signed statement would not be routinely discoverable. It would only be discoverable if it was sought by the party whose statement it was. So I think the answer is yes, Your Honor, we would be taking the same position here as to sort of the content of the statement and whether it qualifies as work product. And I would add that even if these statements were purely factual, there still wouldn't be a waiver of work product here because the law is clear that the work product doctrine is an intensely practical doctrine, and it has to be applied with common sense. The plaintiff's theory of waiver here is a rigid one, and it's hyper-technical. Basically, they're saying that any time a prosecutor asks questions of a witness who may be a subject of a criminal investigation, that disclosure alone constitutes a waiver of the work product protection. That can't be right. The waiver has to be evaluated. Do you disclose subject status as well as target status? I think not routinely, Your Honor. There's nothing in this record that suggests it. But target you do? I believe so, Your Honor. I believe that that's the case. And here, Michael Cohen was obviously he had already been pled guilty at the time that he was interviewed, so obviously he knew that he was a target. But subject status, I think, is not routinely disclosed, and it's certainly not disclosed publicly. And that leads me to sort of just thinking about the application of the waiver doctrine in this particular context. The facts here are really not consistent with any notion that the prosecutors voluntarily disclosed protected information. What they did here was they asked questions of witnesses, which they have to do in order to gather and evaluate evidence for a criminal prosecution. In fact, that's the core premise of Hickman, which is that attorneys have to be able to gather evidence, sift relevant from irrelevant facts, and develop their theories. And that's what this set of documents would reveal if it were disclosed, including who the prosecutors considered subjects and who they didn't consider subjects, who they didn't interview. That information would also be revealed if they were to, if the government were to release these documents. May I ask why this all comes before us on the, I'm sorry, work product exception rather than the law enforcement exemption, 7A? At the time that this FOIA request was made, the government's investigation had concluded. And so we didn't assert Exemption 7A, which is the exemption that protects from disclosure of documents, the disclosure of which would reveal information that would compromise an ongoing or pending He allows you to withhold materials compiled for a law enforcement purpose that would disclose techniques and procedures. Now, we recently wrote about this in Knight First Amendment Institute, and I'm just wondering why you don't think that applies here. We didn't take the position that the questions that were posed here would themselves reveal techniques and procedures. In the Knight case, that was a set of- Yes, it was broader. procedures that were specifically targeted to determine whether specific individuals met certain bars for entry into the United States. But I do think the Court's reference to that case is helpful here, because that, that was a case where, where information was disclosed to the individuals who were asked the question. But the Court recognized that disclosure under FOIA of, even though any of those individuals could have written down the questions they were asked and posted them on the Internet, and you could have sort of tried to regather all of those questions and compile a list of what the government's asking at the border, the Court recognized there was a very significant distinction between questions asked in an individual setting and, you know, FOIA disclosures that would advertise to the world, this is how the government is going to decide whether you meet the bars to entry into the United States. And I think a similar analysis can be applied here with regard to waiver. So often the waiver question is, is the information that's sought to be disclosed the exact information that's already been disclosed? And here it's not. It's not. Any one witness heard the questions he or she was asked and knew the answers that he or she provided, but obviously doesn't know what other witnesses were asked and answers they gave, and certainly doesn't know the limit if the full universe of witnesses that the government decided to interview, who they thought were subjects, who they didn't think were subjects, what questions they didn't ask. Does that mean that if the government had actually shown the 302 report to the interviewee, that that still wouldn't constitute a waiver in your view, because its public disclosure would still reveal so much more to the public than ought to be revealed? So we would not be taking the position, I think, if we had disclosed it to the witnesses. If you gave them a copy, you would have waived it. We would have waived the work product privilege, exactly. Now, there are distinctions in the law between a private disclosure and a FOIA disclosure. So, for example, if the government had disclosed it under a protective order, that wouldn't necessarily mean it had been waived vis-a-vis other exemptions. But we wouldn't be taking the position that the work product privilege applied. And that's, I think, key here, because really the prosecutors did everything they could have done, reasonably, to protect their work product. They didn't disclose the documents to the witnesses. They didn't disclose them outside of the government. They didn't disclose the names of the individuals that they interviewed. They didn't make any public statements about what individuals said during the interviews, unlike in the New York Times case. So really, the prosecutors did everything that they reasonably could have done to protect their work product, this corpus of documents. And so the notion that the prosecutors made a voluntary disclosure of information that was protected really doesn't make common sense. It doesn't work. And I would... Is that why you think this case is different from Steinhardt? I want to make sure I understand that your position on Steinhardt, which the... Yes. I think your adversaries think strongly supports their position. So Steinhardt was a case where the documents themselves were produced to, I believe it was the SEC in that case. Yes. The documents themselves were produced to the SEC. That's a material distinction between this case and Steinhardt No. 1. And No. 2... Well, the argument is that one adversary produced to the other. So the position of the appellant is it should go the other way, too. So we think it's wrong... That argument is incorrect for two reasons. First, the document itself, the corpus of documents, is different from what was disclosed. What was disclosed were the questions. This is a set of documents that reflect what the prosecutors and the agents working with prosecutors thought was important over a long period of time. So that's one distinction. And the other distinction is that in Steinhardt, was that the company there was trying to get an advantage by providing the document to the SEC and then not providing the document to adversaries separately. So there was an effort there to get sort of an unfair litigation advantage. You have absolutely nothing like that in this case. In fact, to the contrary, the prosecutors really did everything they could to protect their work product here, the documents. The only thing that they disclosed is the questions. And if that were a waiver of the work product, that would very much undermine the purposes of the work product doctrine. In fact, many of the cases, including Deloitte that they rely on and other cases, talk about how important it is in the waiver context to look at whether a purported waiver or finding of waiver would advance or undermine the purposes of the work product doctrine. And here, if the court were to find a waiver, it would absolutely undermine the purposes of the work product doctrine for a few reasons. First of all, the prosecutors wouldn't be able to ask questions, gather evidence, sift evidence, and evaluate and hone their legal theories without waiving work product. And that would be contrary to the core premise of Hickman. Secondly, it would be a very unfair rule, because there's no question that the defense counsel's notes, even if they were purely factual, of these same interviews are work product. No question. I think American Oversight would acknowledge that. It's very clear from this court's decision in Wray grand jury subpoenas from 2001. That was a case where the court said that an attorney did not need to testify about factual statements that her client had made to the IRS during an interview, even though those statements were purely factual and even though they were made to an adversary investigating the same matter. So if that's the rule for the defense, creating a rule that would open up government work product would very much undermine the purposes of the rule. May I ask, because I know the government deals with these interviews in all kinds of contexts, you're saying the answers are work product because it wasn't verbatim the agent made decisions as to what to put in his notes. Am I correct? Well, it would still be work product even if it were verbatim. I mean, Hickman itself involved signed statements as well as attorney notes. So attorneys who gather statements from witnesses, even verbatim statements, can be work product. That's what I was going to ask you because I know that often you take notes and people sign them or you take them videotape and you're saying that's still work product. Absolutely it's work product under Hickman and under Rule 26B-3, under that rule, it's factual work product, Your Honor. So it would warrant the lower level of protection that in civil discovery could be obtained in discovery if the adversary demonstrated a substantial need. And if it was the statement of the party himself, they could get it in discovery. But in FOIA, the question about whether there's substantial need, the question about who's requested it, that's immaterial because under Grolier, Williams, and Connolly in the D.C. Circuit, a long line of cases, it does not matter who's requesting it and it doesn't matter whether there would be a substantial need. The question is if it's ordinarily and routinely discoverable in a case against the government and it clearly would not be even if it were verbatim. Thank you. Thank you very much. Thank you. Ms. Anthony. And feel free to take a couple of minutes if you'd like. Oh, thank you. I'd like to just address a few points that Ms. Norman made. I do think, again, just grounding this in the fact that these are three or two forms that are different from the types of witness statements and memoranda that we had in other cases like Hickman is relevant. The government certainly could and is in fact required to record the other types of information that you might expect to see in a witness interview reflecting those mental impressions in a separate document, which American Oversight would not. But even if they were an exact replica of the statement and the individual had signed it, if they're not a party, it's still work product, isn't it? Well, the question, it would still be work product, but whether it was waived. Excuse me? Yes, I think that would be work product. The question is one of waiver. So the Hickman court, for instance, did not address the question of waiver. In addition, there's- The waiver would overwhelm the privilege then. It's not a waiver by the government. How is it a waiver by the government? When the government asks somebody, the government asks you a question and you're aware of what the question is and you give an answer, somehow the government's waived any FOIA objection from some third party as to the interview that they conducted of you? Well, they certainly wouldn't waive any FOIA objection. There are other FOIA exemptions that could apply. Well, we're talking about this FOIA exemption, so let's stay with that. Yes, but also the question is- So the government's work product and what they say in their declarations in this case, what is the work product, is the questions asked and topics discussed, which they say would then in turn reveal their mental impressions, case analysis, legal theory. But the questions asked and topics discussed, which the government is saying is their work product in this case, have already been revealed to those witnesses, litigation adversaries, during the course of the interview itself. I don't think the government is claiming that the witnesses' answers are the government's own work product. That's not disclosing anything. I think they are. They're saying that a witness's signed statement would be government work product. So I think that was where Judge Wesley started you in this. Right. Well, again, I don't think the cases that have found witness statements, signed witness statements like that, address the question of waiver. They also did not universally- Who's there a waiver by? The only disclosure is by the witness to the government. There's no waiver by the government. Well, I don't think that once the government- So I do understand the witness statements. Let me take a step back. The work product protection applies to information and not documents. This line of questioning, however, I think does in fact deal with work product that's in the form of documents themselves. So the work product that attaches to a signed witness statement does reflect, I think, does or could reflect the types of work product that we're discussing that we might expect to see outside of the 302 context. But I do think that just the answers given by a witness do not reflect the government's own work product. Those are, and it is information, to the extent it does, the witness themselves is aware of that information. That's always going to be the case. Anytime there's a witness statement, that's the problem I'm having. The government is collecting evidence, and that has been found to fall within work product. These are the answers of a witness. They're known by the witness, but the government didn't tell them the answers, so there's no waiver. And I'm not sure you've got any case support for the fact that their collection of evidence means that that evidence is disclosable because, hey, the person who gave it to them knew it. Am I missing something in your argument? Well, I think that comes back to the purpose of the work product itself, which, grounded in the practicalities of litigation, it is intensely practical, and it exists to allow the government to do this work within a zone of privacy, be cut free from intrusion by their adversary. But if the adversary knows the very information that is contained- I mean, do you have a case that says that an adversary's disclosure to the government makes the government obliged to provide the information? I mean, you know, that's not Steinhardt there. It was the disclosing party that the information was sought from. Correct, but I do think Steinhardt and all of the other cases are discussing information disclosed to the adversary that did, in fact, reflect more than what was already known to the opposing party. See, on your theory, every government interview would be disclosable. I do not believe that is the case. Where would you draw the lines? How would you cabinet? An adversary has disclosed information to the government. What's not disclosable under FOIA on your theory? The work product and mental impressions that the government generates- But everything the adversary told the government is disclosable. To the extent that the documents do not reflect anything that the adversary does not already know. And there are many cases in which the documents or other information generated by the government would reflect more than what was just told by the witness. Let me give you a very practical situation that the government confronts daily. It's investigating a crime family. And it's got someone who is a member of the family who comes in and makes a proffer of information. And then it interviews another person. And then it interviews another person, all in the family organization. Not sure yet, or not yet bringing an indictment. Are each of them entitled to the statements made by the other? I don't believe through FOIA at that point. Again, I would point to other FOIA exemptions that could protect that information. However, in that situation, the government has released information beyond its own control. What did it release? It got information. It didn't give any information. It got information from all these people. Well, it gave information in the sense that it directed the interview, asked the questions, guided the topics discussed. This would make law enforcement impossible. I mean, you do recognize that, that confederates in an organization could find out what the government had learned from others before there was any indictment, before there was any trial. This would run contrary to Brady, to 3500, to all of the rules that do obligate the government to disclose information like this at particular points in the litigation process. But I'm not understanding, are you really suggesting that if they're in a criminal investigation of an organization, that they would have to disclose the answers given to them by anybody they interview who they think could be a potential subject or target? No, Your Honor. Tell me what the limiting principle is. During the proceeding, disclosure obligations would be guided by exactly what you referred to, Brady, Jenks, et cetera. And those come at a given point in the litigation. I'm not aware of a way to, you know, force disclosure before those points. Through FOIA, other FOIA exemptions would and could apply. Thank you very much. Thank you very much. Thank you both.